CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
October 29, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

**GILLIAN DEEGAN,**

**Plaintiff,**

**v.**

**JOHN R. H. ALEXANDER,** ***In His Individual and Official Capacities*,**

**KAREN MICHELLE WELCH,** ***In Her Individual and Official Capacities,***

**Defendants.**

**CASE NO.:** 7:26CV868

**JURY TRIAL DEMAND**

**COMPLAINT**

COMES NOW, Plaintiff Gillian Deegan (hereinafter, "Ms. Deegan" or "Plaintiff"), by counsel, and states as her Complaint against John R. H. Alexander and Karen Michelle Welch, both in their individual and official capacities, the following:

**JURISDICTION AND VENUE**

1. At all times relevant to this matter, Defendants served and acted under color of state law as officials of the Commonwealth of Virginia.

2. Venue is proper as the acts and omissions described below occurred within the Western District of Virginia.

3. This matter raises questions of federal law. Federal questions are presented pursuant to 42 U.S.C. § 1983. This Court possesses jurisdiction over this matter. *See generally*, 28 U.S.C. § 1331.

4. Plaintiff's federal law claim arises pursuant to 42 U.S.C. § 1983, to-wit, First Amendment retaliation. Plaintiff engaged in protected speech by reporting matters of

public concern and was retaliated against for having done so.

5. The acts and/or omissions of Defendants from which the following causes of action arise, occurred within the Western District of Virginia.

6. Plaintiff was employed as an Assistant Commonwealth's Attorney in Botetourt, Virginia.

7. At all times relevant, Ms. Deegan was a resident of Fincastle, Virginia.

8. Defendant Alexander is the Commonwealth's Attorney of Botetourt County and is a resident of Botetourt County, Virginia.

9. Defendant Welch is a Senior Assistant Attorney General and is a resident of Richmond, Virginia.

10. Plaintiff worked full-time and received wages and benefits.

11. Defendants had actual knowledge of Plaintiff's protected acts prior to enacting a retaliatory scheme to harm her.

12. Defendants had actual knowledge of Plaintiff's speech on matters of public concern as described below.

## FACTS

13. At all times relevant, Plaintiff met the legitimate expectations of her job.

14. Plaintiff has suffered and will continue to suffer pecuniary loss due to the retaliatory actions of Defendants.

15. Plaintiff was employed by the Botetourt County Commonwealth's Attorney's Office for approximately twenty-two years, ultimately serving as Chief Deputy Commonwealth's Attorney until her retaliatory termination on March 4, 2026.

16. Beginning in approximately December 2023, Plaintiff became aware of evidence that Senior Assistant Attorney General Karen Michelle Welch and members of

the Virginia Office of the Attorney General's Animal Law Unit (ALU") were engaging in unlawful conduct, abuse of governmental authority, unethical practices, and violations of Virginia law during and following the Natural Bridge Zoo investigation.

17. Plaintiff observed members of the Animal Law Unit intentionally seize and impound companion animals in a manner that Plaintiff reasonably believed violated Virginia Code § 3.2-6569 after those officials expressly acknowledged they knew such conduct was prohibited by Virginia law.

18. Plaintiff observed these acts to occur in Rockbridge County. Plaintiff is not a prosecutor in Rockbridge County. Plaintiff had no official duty to observe the conduct of the ALU. Plaintiff had no duty as an Assistant Commonwealth's Attorney of Botetourt County, to speak on matters of public concern regarding the ALU's activities in Rockbridge County.

19. Plaintiff became aware that officials within the Animal Law Unit acknowledged the legal limitations imposed by Virginia law regarding onsite impoundment of companion animals but nevertheless intentionally proceeded in violation of those statutory requirements.

20. Plaintiff further observed and documented evidence that witnesses favorable to criminal defendants were subjected to retaliation after providing testimony inconsistent with the Attorney General's litigation position, including actions taken against animal sanctuary operator Lois Magill following her testimony concerning the condition of animals seized from Natural Bridge Zoo.

21. Plaintiff also reported that members of the Animal Law Unit were using the Virginia Animal Fighting Task Force, a private nonprofit organization, to perform

governmental law-enforcement functions despite the absence of lawful governmental authority to do so.

22. On or about October 3, 2024, Plaintiff personally observed the live-streamed removal of giraffes from Natural Bridge Zoo and reasonably concluded that members of the Animal Law Unit were actively violating Virginia animal cruelty statutes and other provisions of Virginia law.

23. Plaintiff observed giraffes being chased for prolonged periods, intentionally frightened, denied food and water, subjected to unnecessary stress, and handled in a manner that Plaintiff reasonably believed constituted unlawful animal cruelty under Virginia law.

24. Plaintiff further observed a male giraffe struck in the neck by a heavy gate during the seizure operation and observed officials continue the operation without obtaining appropriate emergency veterinary treatment despite obvious indications that the animal had sustained significant injury.

25. Plaintiff immediately reported those observations to Sergeant Black of the Virginia State Police and urged that the unlawful conduct be documented and stopped before additional harm occurred. Plaintiff engaged in this conduct as a citizen. Plaintiff was under no directive of the Botetourt County Commonwealth Attorney's Office to engage in such reports.

26. Plaintiff likewise notified officials with the United States Department of Agriculture that members of the Animal Law Unit were violating applicable animal welfare requirements and requested governmental intervention. Plaintiff was under no directive of the Botetourt County Commonwealth Attorney's Office to engage in such reports.

27. Plaintiff further became aware of evidence that members of the Animal Law Unit had allegedly misrepresented Virginia law concerning appellate bond requirements to prevent Natural Bridge Zoo from exercising its statutory appellate rights. Plaintiff reported those concerns after determining that Virginia law permitted a secured bond rather than the cash bond being demanded by the Attorney General's Office.

28. Plaintiff also reported evidence that members of the Animal Law Unit had allegedly obtained judicial authority through false or misleading representations, concealed material exculpatory evidence, presented or relied upon perjured testimony, and otherwise committed a fraud upon Virginia courts.

29. Plaintiff further advised law-enforcement officials that she reasonably believed the seizure itself had been obtained through fraud upon the court and that the continued treatment of the animals violated Virginia criminal law.

30. Plaintiff ultimately reported the foregoing misconduct to senior officials within the Office of the Attorney General, members of the Virginia General Assembly, state law-enforcement officials, federal law-enforcement officials, and federal regulatory officials because Plaintiff reasonably believed that government officials were abusing public office, violating Virginia law, misleading Virginia courts, retaliating against witnesses, and engaging in criminal misconduct. Plaintiff was under no directive of the Botetourt County Commonwealth Attorney's Office to engage in such reports.

31. On or about March 4, 2024, Plaintiff reported to Deputy Attorney General Theo Stamos that Ms. Welch and members of the Animal Law Unit had engaged in unlawful retaliation against witnesses, unlawful animal seizures, misuse of the Virginia Animal Fighting Task Force, and other violations of Virginia law.

32. In April of 2024, Plaintiff again spoke with Deputy Attorney General Stamos concerning the misconduct within the Animal Law Unit. During that conversation, Ms. Stamos acknowledged Plaintiff's concerns by stating, "you're right, she's a problem." Ms. Stamos referred to Ms. Welch. Plaintiff had no official duty to report to Ms. Stamos. Plaintiff spoke to Ms. Stamos because it was a matter of public concern.

33. On or about October 3, 2024, while observing the live-streamed removal of giraffes from Natural Bridge Zoo, Plaintiff witnessed what she reasonably believed to be ongoing violations of Virginia criminal statutes and animal welfare laws.

34. On the same date, Plaintiff reported those violations to Virginia State Police Sergeant Black and urged that the unlawful conduct be stopped and documented.

35. Plaintiff also reported the same misconduct to USDA Supervisor Dr. Dana Miller after observing what Plaintiff believed were continuing violations of both Virginia law and federal animal welfare regulations.

36. On or about October 7, 2024, Plaintiff again reported the unlawful conduct of the Animal Law Unit to Deputy Attorney General Theo Stamos. Plaintiff had no official duty to report to Ms. Stamos. Plaintiff spoke to Ms. Stamos because it was a matter of public concern.

37. On or about October 7, 2024, Plaintiff reported all of the above to Virginia Delegate Terry Austin. Plaintiff had no official duty to express and present this information to Terry Austin. Plaintiff did so as a citizen speaking on a matter of public concern.

38. Plaintiff continued investigating Karen Michelle Welch and the Animal Law Unit's conduct and obtained evidence which she reasonably believed demonstrated perjured testimony, fraud upon the courts, and concealment of exculpatory evidence.

39. On or about February 17, 2025, Plaintiff again communicated with Delegate Terry Austin concerning the misconduct within the Attorney General's Animal Law Unit including that of Karen Michelle Welch. Plaintiff had no official duty to express and present this information to Terry Austin. Plaintiff did so as a citizen speaking on a matter of public concern.

40. On or about February 21, 2025, acting upon Delegate Austin's recommendation, Plaintiff communicated her concerns to Senator Scott Surovell. Plaintiff had no official duty to express and present this information to Scott Surovell. Plaintiff did so as a citizen speaking on a matter of public concern.

41. During May 2025, Plaintiff again reported that the Animal Law Unit was engaging in unlawful conduct during additional giraffe seizures and specifically warned law-enforcement officials that one giraffe was suffering from capture myopathy and required immediate emergency veterinary intervention.

42. On or about May 22, 2025, Plaintiff reported ongoing violations of Virginia law involving the Animal Law Unit's treatment of giraffes to Rockbridge County Sheriff Tony McFaddin and Commonwealth's Attorney Jared Moon.

43. It was an essential function of Plaintiff's employment to prosecute crimes occurring in Botetourt County, however, Plaintiff spoke on widespread matters of public concern far outside her official job duties. Plaintiff repeatedly engaged in communications with state officials and legislators with whom she had no official duty to communicate. Plaintiff reported in good faith what she reasonably believed constituted fraud upon the court, unlawful governmental conduct, and continuing violations of Virginia criminal law.

44. On or about August 20, 2025, Plaintiff was interviewed by FBI Special Agent Lynne Witt regarding the misconduct Plaintiff had reported involving Ms. Welch and the Attorney General's Animal Law Unit.

45. Throughout 2024 and 2025, Plaintiff repeatedly communicated concerns regarding governmental misconduct, abuse of prosecutorial authority, unlawful seizures, retaliation against witnesses, fraud upon the courts, and violations of Virginia law to numerous governmental officials. Plaintiff had no official duty to express and present this information. Plaintiff did so as a citizen speaking on a matter of public concern.

46. Plaintiff's communications concerned governmental misconduct, misuse of governmental authority, abuse of prosecutorial power, violations of Virginia law, and matters directly affecting the public's confidence in the integrity of state government. Plaintiff's speech addressed matters of substantial public concern.

47. Plaintiff's communications were not complaints regarding her own salary, benefits, promotion, discipline, or other private employment matters.

48. Plaintiff repeatedly communicated her concerns to officials outside her ordinary supervisory chain, including members of the General Assembly, federal law enforcement officials, state law enforcement officials, federal regulatory officials, and senior officials within the Office of the Attorney General.

49. Plaintiff made these reports because she believed the public had a compelling interest in exposing unlawful governmental conduct.

50. Defendants became aware that Plaintiff had repeatedly engaged in the aforementioned speech on matters of public concern.

51. During approximately late 2025, Plaintiff learned she had become a target of the Attorney General's Office because of her protected speech.

52. On or about March 4, 2026, a Deputy Attorney General contacted Plaintiff's elected Commonwealth's Attorney.

53. During that communication, the Deputy Attorney General advised Plaintiff's employer that officials within the Attorney General's Office intended to file a substantial Virginia State Bar complaint against Plaintiff.

54. Ms. Welch accused Plaintiff of speaking with represented persons, acting outside her authority, providing information contrary to the Commonwealth's interests, and assuming a false identity, all to a degree that violated the Virginia Rules of Professional Conduct. This was false.

55. These accusations were knowingly false or were made with reckless disregard for their truth or falsity.

56. Immediately following that communication, Defendant Alexander terminated Plaintiff's employment. Defendant Alexander knew that Plaintiff had not engaged in any misconduct at her job or otherwise. Defendant Alexander knew that Plaintiff met the legitimate expectations of her position and that she fulfilled the essential functions of her job. Defendant Alexander agreed with the other Defendant to play a role in the retaliatory scheme to harm Plaintiff. Defendant Alexander wrongfully terminated Plaintiff in furtherance of his role and the agreement of Defendants to retaliate against Plaintiff.

57. Defendant Alexander was aware of Plaintiff's engagement of speech upon a matter of public concern prior to making the decision to terminate her employment.

58. Defendant Alexander knew the substance

59. It was not Defendant Welch's decision to termination Plaintiff because she did not possess the authority to do so.

60. Plaintiff's employment officially ended on March 4, 2026.

61. At all relevant times prior to Plaintiff's termination, Defendants knew Plaintiff had repeatedly engaged in public speech regarding Ms. Welch and the Attorney General's Animal Law Unit.

62. Plaintiff's protected speech of governmental misconduct were a substantial and motivating factor in Defendants' decision to procure, encourage, or cause Plaintiff's termination. But for Plaintiff's protected speech, she would not have been terminated.

63. In March of 2026, Karen Michelle Welch orchestrated the filing of a complaint against Plaintiff with the Virginia State Bar. This complaint includes the aforementioned false allegations against Plaintiff. This complaint was filed with malice and a reckless disregard for the truth. This complaint was filed to harm Plaintiff with falsity. The complaint was filed in retaliation for Plaintiff's protected speech.

64. On October 28, 2026, the Virginia State Bar Eighth District Committee ruled in favor of Plaintiff and dismissed the false complaint orchestrated by Defendant Welch. In so ruling, the Committee found:

> On December 6, 2023, a search warrant was executed at the Natural Bridge Zoo ("NBZ") in Rockbridge County, owned by Karl and Debbie Mogensen, and 100 animals were seized by the County of Rockbridge. On December 7, 2023, Ms. Welch was appointed at the request of Jared Moon, Commonwealth's Attorney for the County of Rockbridge, as a special prosecutor in the case against the Mogensens. The Botetourt County Commonwealth's Attorney's Office was not involved in the case. During the seizure of the animals, Ms. Welch communicated with Ms. Deegan to obtain logistical advice. Ms. Welch and Ms. Deegan communicated about the case by text and phone.
>
> . . .
>
> Ms. Deegan stated that she had reported to numerous officials that the conduct of the ALU during the seizure had been illegal and unethical, and when no one did anything, she reached out to Ms. Crosky and her organization as a "watchdog" to suggest that they engage in a protest. Ms.

> Deegan stated that she shared information about a protest, FOIA requests (including specifically whose documents to request), and relevant law.

65. The VSB's findings memorialized some of Plaintiff's protected speech.

66. The reasons advanced for Plaintiff's termination were false, pretextual, or materially exaggerated and were used to conceal retaliation for Plaintiff's constitutionally protected speech. All parties knew the allegations against Plaintiff were false.

67. But for Plaintiff's repeated protected reports exposing governmental misconduct, Plaintiff would not have been terminated.

68. Defendants intentionally acted under color of state law to retaliate against Plaintiff because of her protected speech.

69. As a direct and proximate result of Defendants' unconstitutional retaliation, Plaintiff suffered the loss of her employment, wages, employment benefits, retirement accrual, professional reputation, emotional distress, and other compensatory damages.

70. Defendants acted intentionally, maliciously, and with reckless or callous indifference to Plaintiff's clearly established First Amendment rights, entitling Plaintiff to an award of punitive damages against the individual defendants.

## COUNT I: FIRST AMENDMENT FREEDOM OF SPEECH RETALIATION 42 U.S.C § 1983

71. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

72. Plaintiff engaged in constitutionally protected speech on matters of public concern.

73. Defendants had actual notice of Plaintiff's expression of speech.

74. Plaintiff's speech did not impede or conflict with the performance of her job duties. Plaintiff did not engage in insubordination.

75. Plaintiff's speech did not interfere with the operation of or undermine the mission of the Commonwealth Attorney's Office.

76. Defendants wrongfully terminated Plaintiff in retaliation due to speaking on matters of public concern.

77. Defendant Welch issued a false bar complaint against Plaintiff that harmed Plaintiff's reputation within her field.

78. Defendants violated Plaintiff's First Amendment rights and retaliated against her in violation of 42 U.S.C. § 1983.

79. Defendants retaliated against Plaintiff because of her constitutionally protected speech.

80. Defendants acted with reckless and/or callous indifference to Plaintiff's legal rights. Defendants acted with malice.

81. Plaintiff has suffered compensatory damages, emotional distress, and pecuniary losses due to Defendants' actions.

**WHEREFORE**, Plaintiff Gillian Deegan prays for judgment against Defendants John R. H. Alexander and Karen Michelle Welch, jointly and severally, for compensatory damages, punitive damages, lost wages, back pay, front pay, full reinstatement of fringe benefits and seniority rights, together with prejudgment and post judgment interest and attorneys' fees and costs, and for such other and further relief as may be just and

equitable.

A TRIAL BY JURY ON ALL THINGS TRIABLE IS HEREBY REQUESTED.

Respectfully Submitted,
**GILLIAN DEEGAN**

By: ______________________________
Thomas E. Strelka, Esq. (VSB # 75488)
VIRGINIA EMPLOYMENT LAW
*Counsel for Plaintiff*

Thomas E. Strelka, Esq. (VSB # 75488)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Ave.
Roanoke, VA 24018
Tel: 540-283-0802
thomas@vaemployment.law